UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| JANELLE D. GOODWIN, | ) | |
| --- | --- | --- |
| Plaintiff, | ) | |
| v. | ) | No. 3:16-CV-442-HBG |
| NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 19]. Now before the Court is the Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 14 & 15] and the Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 20 & 21]. Janelle D. Goodwin ("the Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of the Defendant Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner"). For the reasons that follow, the Court will **DENY** the Plaintiff's motion, and **GRANT** the Commissioner's motion.

**I.    BACKGROUND**

In April 2014, the Plaintiff filed an application for disability insurance benefits and for supplemental security income, claiming a period of disability that began on February 3, 2014. [Tr. 238, 286, 312]. After her application was denied initially and upon reconsideration, the Plaintiff

---

[1] During the pendency of this case, Nancy A. Berryhill replaced Acting Commissioner Carolyn W. Colvin. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted as the Defendant in this case.

requested a hearing before an ALJ. [Tr. 144]. Following a hearing, the ALJ found the Plaintiff was "not disabled." [Tr. 21-34]. The Appeals Council denied the Plaintiff's request for review [Tr. 1-6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, the Plaintiff filed a Complaint with this Court on July 12, 2016, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication. Having considered the medical evidence in the record, the testimony at the hearing, and all other evidence in the record, the Court finds that the medical history of the Plaintiff and the content of the ALJ's decision are not in dispute, and need not be repeated here.

The Court notes the Plaintiff's brief is 29 pages with excessive footnotes (69 in total). The Court directs Plaintiff's counsel to Local Rule 7.1(b) which states, briefs "shall not exceed 25 pages in length unless otherwise ordered by the Court." E.D. Tenn. L.R. 7.1(b). Counsel is directed to seek leave of Court for future filings that exceed the 25 page limit.

## II.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner and whether the ALJ's findings are supported by substantial evidence. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it

is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## III. ANALYSIS

The Plaintiff contends that the ALJ's residual functional capacity ("RFC") determination and step five finding are not supported by substantial evidence.

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

3

> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's RFC is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4), -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite her limitations. §§ 404.1545(a)(1), 416.945(a)(1). The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d 525. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

The Plaintiff submits that the ALJ erred in assessing her RFC because he did not properly weigh the medical opinions of her treating physician, P. Allen Jones M.D., or the Plaintiff's credibility. [Doc. 15 at 19-25]. In addition, the Plaintiff submits that the ALJ's step five determination is not supported by substantial evidence because the hypothetical question the ALJ posed to the vocational expert ("VE"), whose response the ALJ relied on in determining that other work existed in the national economy the Plaintiff could perform, did not adequately represent the Plaintiff's moderate limitations in concentration, persistence, and pace. [*Id.* at 25-26]. The Court will address each alleged error in turn.

### A.    Opinion of P. Allen Jones, M.D.

Dr. Jones is the Plaintiff's treating gastroenterologist. The Plaintiff has a history of gastrointestinal problems following gastric bypass surgery in 2010, which proceeded multiple

4

surgeries including adhesions lysis, small bowel obstruction, and a hysterectomy. [Tr. 733, 1048]. The Plaintiff's symptoms include nausea, abdominal pain, constipation, early satiety, fatigue, and depression. [Tr. 733, 1049-50]. Diagnoses include gastric bypass surgery, chronic abdominal pain, functional gastrointestinal disorder, NOS, and constipation. [*Id.*]. In addition to multiple surgeries, treatment has included high doses of laxatives, evaluation by surgeons and nutritionists, and participation in pain clinics. [Tr. 734].

On February 25, 2014, Dr. Jones completed a "Residual Functional Capacity Form." [Tr. 733-38]. He opined that the Plaintiff could stand for "several hours" but would "likely" be unable to stand for six to eight hours and would be prevented from siting up to six to eight hours. Dr. Jones explained that the Plaintiff would need to lie down to alleviate her pain. [Tr. 734-35]. He also opined that the Plaintiff could consistently reach in all directions except she could only reach down towards the floor on a frequent basis, she could lift and carry up to 50 pounds in an eight-hour period and over 50 pounds daily, and she would have difficulty bending and squatting but no problem kneeling or turning any parts of her body. [Tr. 735-36]. Dr. Jones concluded that the Plaintiff could continue to work but on a limited basis, and the Plaintiff's condition was not likely to change. [Tr. 737].

In a signed statement, also dated February 25, 2014, Dr. Jones explained that the Plaintiff would be absent from work more days than she would be present due to her symptoms of abdominal pain, nausea, and extreme constipation. [Tr. 732]. Dr. Jones also related that "[t]hough at physical glance [and] medical findings show no restrictions," the Plaintiff would be unable to complete a day of work without lying down in order to allow her body to rest due to pain. [*Id.*].

Dr. Jones also completed a "Gastrointestinal Disorders Impairment Questionnaire" on December 8, 2014. [Tr. 1048-]. Dr. Jones opined that in an eight-hour day, the Plaintiff could sit

5

for four hours, stand or walk for one hour, and must get up and move around "every hour or so" when sitting. [Tr. 1051-52]. Moreover, Dr. Jones noted that the Plaintiff would need ready access to a restroom one to two times per day and would likely be absent from work more than three times a month. [Tr. 1052].

In the disability determination, the ALJ determined that the Plaintiff had an RFC to perform sedentary work, except she can occasionally push and pull arm and leg controls, she cannot climb, crawl, or work around unprotected heights, she must have reasonable access to bathrooms and breaks, and is limited to unskilled work with no contact with the public. [Tr. 25-26]. The ALJ gave Dr. Jones's opinions "limited weight," finding his opinions inconsistent with "the medical evidence of record as a whole." [Tr. 31]. Specifically, the ALJ found the opinions contrary to the findings made by the Plaintiff's primary care physician Anastasia Rairigh, M.D., and pain management specialist Cynthia Niendorff, M.D. [Tr. 31-32]. Physical examinations with Dr. Rairigh and Dr. Niendorff were largely unremarkable with the exception of some neck and abdominal tenderness at the Plaintiff's pain management appointment. [Tr. 32]. The ALJ also cited to Dr. Rairigh's observation that although the Plaintiff complained of daily, debilitating pain, the Plaintiff presented to her appointment well-dressed with her makeup and hair in order, she calmly moved about the room, laughing and talking with her husband, and gave no appearance of even minimal discomfort. [*Id.*].

The Plaintiff argues the reasons cited by the ALJ are insufficient to reject the opinions of Dr. Jones. The Plaintiff maintains that Dr. Jones based his opinions on the Plaintiff's medical history which included surgeries, diagnostic studies, and evidence of loss of appetite, abdominal pain and cramps, nausea, and vomiting, and that the ALJ failed to cite to any authority that undermined Dr. Jones's findings and instead relied on his own lay opinion. [Doc. 15 at 20-22].

6

The Plaintiff further contends that treatment rendered by Dr. Rairigh and Dr. Niendorff is insufficient to undermine Dr. Jones's opinions because the Plaintiff was seen once by Dr. Rairigh and twice by Dr. Niendorff, with each visit primarily for the purpose of pain, fibromyalgia, and headaches, not the Plaintiff's gastrointestinal impairment. [*Id.* at 21].

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) is not inconsistent with the other substantial evidence in the case record, it must be given "controlling weight." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). When an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. *Id.* A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (July 2, 1996). Nonetheless, the ultimate decision of disability rests with the ALJ. *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Sullenger v. Comm'r of Soc. Sec.*, 255 Fed. App'x 988, 992 (6th Cir. 2007).

7

The Court finds that substantial evidence supports the ALJ's determination of limited weight to Dr. Jones's opinions. The ALJ did not rely on his own lay opinion in assessing Dr. Jones's opinions but relied on other medical sources, namely Dr. Rairigh and Dr. Niendorff. Both physicians noted largely unremarkable physical examinations findings. [Tr. 1231-32, 1242, 1266-67]. Dr. Niendorff noted in November 2015 that although the Plaintiff reported left hip pain with straight leg raises and tenderness in her neck and abdomen, she showed normal ranges of motion, normal muscle strength and tone, and no pain with movement of her arms and legs. [Tr. 1266-67]. In October 2015, Dr. Rairigh found that the Plaintiff exhibited 14 of 18 fibromyalgia tender points but declined to treat with narcotics, encouraging the Plaintiff to instead engage in an active lifestyle. [Tr. 1242]. At the Plaintiff's following appointment, she had normal muscle strength and displayed a normal gait. [Tr. 1232]. And while the Plaintiff complained of headaches and migraines with nausea, Dr. Rairigh remarked that the Plaintiff did not appear in even minimal discomfort, and was observed to be "well dressed, make up [and] hair in order, calmly moving about room, laughing chatting with husband not bothered by right lights or noise." [Tr. 1229, 1231-32].

With specific regard to the Plaintiff's gastrointestinal complaints Dr. Rairigh found many of the Plaintiff's surgeries to be unnecessary and stressed that the Plaintiff needed to stay away from further surgeries, stop using harsh laxatives, which exacerbated her irritable bowel syndrome, and to stay active and increase her physical activities. [Tr. 1232, 1242]. Dr. Rairigh also noted that the Plaintiff's narcotic use added to her constipation. [Tr. 1232].

The Plaintiff insists that treatment from Dr. Rairigh and Dr. Niendorff is insufficient to undermine Dr. Jones's findings because both physicians treated the Plaintiff primarily for other conditions, not the Plaintiff's gastrointestinal impairment. The Court observes, however, that the

8

Plaintiff was specifically seen by Dr. Niendorff for pain, including abdominal pain, [Tr. 1262], the very symptom Dr. Jones opined prevented the Plaintiff from working because she would need to lie down and rest to gain relief from her pain. [Tr. 732]. Moreover, Dr. Rairigh treated the Plaintiff's complaint of constipation [Tr. 1229], another primary symptom of the Plaintiff's gastrointestinal impairment. Therefore, Dr. Rairigh's and Dr. Niendorff's treatment and examining findings are highly relevant to the Plaintiff's claim that her gastrointestinal impairment renders her disabled.

The Plaintiff argues that Dr. Jones is entitled to more deference because his opinions were based on clinical and diagnostic testing. But Dr. Jones himself explained that "medical findings show no restrictions." [Tr. 732]. The Plaintiff further submits that the ALJ failed to consider the regulatory balancing factors in determining the weight Dr. Jones's opinions deserved. [Doc. 15 at 2]. To the contrary, the ALJ recognized that Dr. Jones was a treating physician who specialized in gastroenterology and considered the supportability and consistency of his opinions by assessing them against the other evidence in the record. [Tr. 27-32]; *see* 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

Accordingly, the Court finds that the ALJ did err in weighing Dr. Jones's opinions.

### B. Plaintiff's Credibility

The Plaintiff also contends that the ALJ failed to properly evaluate her credibility.

"In evaluating complaints of pain, an ALJ may properly consider the credibility of the claimant." *Walters*, 127 F.3d at 531. The ALJ's findings regarding credibility "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters*, 127 F.3d at 531. However, the ALJ's finding must be supported by substantial evidence. *Id.*

The Plaintiff complains that the ALJ's finding that she is able to engage in some activities, such as exercising, going to movies, and shopping with her children, "does not mean that she can withstand the demands of full-time work on a regular basis." [Doc. 15 at 24]. The Plaintiff also argues that her attempts to work, a factor considered by the ALJ, was improperly weighed because her unsuccessful attempts demonstrate that she is unable to maintain a job. [*Id.*]. The Plaintiff further argues that the ALJ's finding that she was eating excessively despite reporting nausea and vomiting with eating was a gross mischaracterization of the record as only a single treatment note documented overeating. [*Id.* at 25].

The Court finds the ALJ did not err. While engaging in activities such as shopping and going to the movies may not rise to the level of substantial gainful activity, such activities demonstrate that the Plaintiff is not as limited, and her pain is not as severe, as she alleges. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (listing daily activities as an appropriate factor to be considered in assessing a claimant's subjective complaints of pain). Moreover, the ALJ's finding that the Plaintiff made attempts to work and was reported to be overeating despite her claims that she could not eat without frequent nausea and pain, were only two considerations that the ALJ took into account. The ALJ provided numerous, specific examples that, taken together, undermine the severity of the Plaintiff's subjective allegations.

The ALJ observed that treatment records frequently noted that the Plaintiff was well dressed and groomed, appearing in no acute distress; a mental health counselor observed that the Plaintiff often appeared "gamy," and she enjoyed being the martyr to quite a high degree; Dr. Rairigh noted that the Plaintiff had insisted on many unnecessary exploratory laparotomies that created far more problems than her original issue; and Dr. Rairigh also observed that despite the Plaintiff's complaints of daily, debilitating headaches, she appeared to be in no acute distress, her

10

hair and makeup was well done, she calmly moved about the waiting room, laughing and chatting with her husband, and physical examination findings were unremarkable with the Plaintiff demonstrating that she was not in even minimal discomfort. [Tr. 31]. "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531.

Accordingly, the Court finds the Plaintiff's allegations that the ALJ erred in weighing her credibility to be without merit.

### C. Hypothetical Question

The Plaintiff lastly maintains that the ALJ relied on flawed VE testimony when he concluded at step five that other work exists in the national economy that the Plaintiff is able to perform. [Doc. 25 at 15]. Citing to the ALJ's step three finding that the Plaintiff has moderate difficulties in concentration, persistence, and pace, the Plaintiff argues that the hypothetical question the ALJ posed to the VE did not accurately represent the Plaintiff's moderate limitations. [Doc. 15 at 25]. During the hearing, the ALJ asked the VE whether someone with the Plaintiff's RFC, including a limitation to unskilled work, could perform work in the national economy. [Tr. 66]. The VE confirmed there are jobs available, and the ALJ relied on the VE's response in making his step five determination. [Tr. 33-34]. The Plaintiff, however, argues that a limitation of unskilled work does not accommodate her moderate difficulties in concentration, persistence, and pace. [Doc. 15 at 25-26]. The Court finds no merit in the Plaintiff's contention.

The ALJ found the Plaintiff moderately limited in concentration, persistence, and pace at step three in evaluating the "paragraph B" criteria. [Tr. 24-25]. Social Security Ruling 96-8p explains, "limitations identified in the 'paragraph B' . . . criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation

11

process." 1996 WL 374184, at *4 (July 2, 1996). Step three regulates a "narrow category of adjudicatory conduct" because it "governs the organization and evaluation of proof of listed impairments that, if supported, renders entitlement to benefits a foregone conclusion." *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 649 (6th Cir. 2006) (en banc). "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process," by contrast, "requires a more detailed assessment by itemizing the various functions contained in the broad categories found in paragraphs B. . . ." Soc. Sec. Rul. 96-8p, 1996 WL 374184 at *4. A claimant's RFC, therefore, is a subsequent determination that is distinct and separate from step three and findings made therein. *See Turbeville v. Colvin*, No. 1:12-CV-00061, 2014 WL 6605483, at *10 (M.D. Tenn. Nov. 19, 2014) (holding that step 3 and the RFC "are separate steps and a finding at one step does not necessarily equate to the same finding being made at a later step"); *Bailey v. Astrue*, No. CIV.A. 10-227-JBC, 2011 WL 3880503, at *2 (E.D. Ky. Aug. 31, 2011) ("The RFC assessment takes into account all of the relevant evidence in the case record, . . . and the ALJ was not required to specifically adopt 'paragraph B' findings in his development of a complete and accurate assessment of Bailey's mental impairment.") (citing Soc. Sec. Ru. 96-8p, 1996 WL 374184 at *4).

Here, the ALJ did not make an explicit finding in the RFC determination that the Plaintiff was moderately limited in concentration, persistence, and pace. Nor was the ALJ required to do so simply because he found such moderate limitations existed at step three in regard to the "paragraph B" criteria. *See id.* Nonetheless, to the extent that the ALJ's limitation of unskilled work was meant to accommodate a moderate limitation in concentration, persistence, and pace, the Court finds that a limitation of unskilled work was appropriate.

The Plaintiff cites to *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010) for the proposition that a limitation to unskilled work does not accurately represent, or accommodate,

a claimant's moderate limitation in concentration, persistence, and pace. *Ealy*, however, is easily distinguishable. The Sixth Circuit Court of Appeals concluded in *Ealy* that an RFC assessment and hypothetical question that included the limitation "simple repetitive tasks and instruction in nonpublic work settings" did not accurately represent an opinion rendered by the claimant's doctor who found that the claimant was limited to "simple, repetitive tasks *[for] [two-hour] segments over an eight-hour day were speed was not critical*." (emphasis added). The Sixth Circuit clarified in *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 436-37 (6th Cir. 2014), that the problem in *Ealy* was that the RFC assessment and hypothetical "truncated the doctor's specific restrictions." Distinguishing *Ealy*, the *Smith-Johnson* Court found "the limitation to simple, routine, and repetitive tasks adequately conveys Smith–Johnson's moderately-limited ability 'to maintain attention and concentration for extended periods'" because "[u]nlike in *Ealy*, Dr. Kriauciunas did not place any *concrete functional limitations* on her abilities to maintain attention, concentration, or pace when performing simple, repetitive, or routine tasks." *Id.* at 437 (emphasis added). The Plaintiff's reliance on *Ealy* is further undermined by a more recent Sixth Circuit holding in which case the Court observed, "Case law in this Circuit does not support a rule that a hypothetical providing for simple, unskilled work is *per se* insufficient to convey moderate limitations in concentration, persistence and pace." *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 635 (6th Cir. 2016).

Here, the ALJ did not adopt a medical opinion that rendered a "concrete specific functional limitation" on the Plaintiff's ability to maintain attention, concentration, and pace, and the ALJ himself did not opine a specific functional limitation in attention, concentration, and pace in the RFC determination. Therefore, to the extent that the limitation of unskilled work was intended to accommodate a moderate limitation, the Court finds the limitation was appropriate. Accordingly,

13

the Court finds that the hypothetical presented to the VE was not flawed, and the ALJ's step five finding is supported by substantial evidence. *See Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001) ("A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments.").

## VI. CONCLUSION

Based on the foregoing, the Plaintiff's Motion for Summary Judgment [**Doc. 14**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 20**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be directed to **CLOSE** this case.

ORDER ACCORDINGLY.

_____
United States Magistrate Judge